# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESMAR ENERGY, INC., a Pennsylvania Business Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RANGE RESOURCES – APPALACHIA, LLC, a Delaware Limited Liability Corporation,<br><br>Defendant. | Case No.: 2:17-cv-00928-LPL<br><br>Lisa Pupo Lenihan, Magistrate Judge<br><br>**Electronically Filed** |

## BRIEF IN SUPPORT OF MOTION TO REMAND TO STATE COURT PURSUANT TO 28 U.S.C. § 1447(c)

Plaintiff, Jesmar Energy, Inc. ("Jesmar") hereby files its Brief in Support of Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(c) and states as follows:

### I. INTRODUCTION

The issue presently before this Honorable Court through the Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(c) is not complex, as it simply requires this Honorable Court to evaluate the propriety of a removal by the Defendant, Range Resources-Appalachia, LLC ("Range") pursuant to 28 U.S.C. § 1446 in a case where the Complaint identified damages as an amount presently less

1

than $50,000.00 and where the calculable damages in the Complaint were a fraction of the $75,000.00 amount in controversy requirement. It is respectfully submitted that the Notice of Removal is deficient because it is conclusory in nature and sets forth no facts with which this Honorable Court may determine that the amount-in-controversy threshold of $75,000.00 has been met because there are no such facts.

## II. Factual Background

On June 12, 2017, Jesmar filed a Complaint in the Court of Common Pleas of Greene County against Range, asserting three (3) claims: Breach of Contract, Unjust Enrichment, and a Claim for Declaratory Relief. [Doc. 1-2]. The center of the dispute between Jesmar and Range was Range's non-compliance with an Assignment of Oil and Gas Lease between Jesmar and Rice Energy (the "Assignment"), that was subsequently acquired by Range. [Doc. 1-2]. Jesmar had obtained an oil and gas lease over a piece of property in Greene County, Pennsylvania (the "Lease") and, by way of the Assignment, transferred the working interest in that lease to Range. [Doc. 1-2].

The Lease provided for a one-eighth ($1/8^{th}$) royalty and, through the Assignment, Jesmar retained an overriding royalty interest (the "Override") "equal to the difference between the respective lease burdens and 17.5% in and to all of the oil, gas and the respective constituents thereof, produced, saved, and marketed

from the lands described therein. . ." [Doc. 1-2]. When Range began to make Override payments to Jesmar that were required by the Assignment, Range deducted for costs such as transportation, gathering, fuel purchases and processing gas. [Doc. 1-2 at ¶ 20]. The Complaint identifies deductions to total $7,354.86.[1] [Doc. 1 at ¶¶ 23-25]. The Assignment does not authorize any deductions from the Override, as the Assignment specifically identifies the value of the Override as the difference in the lease burden and 17.5% of all the oil and gas that is produced, saved and marketed. [Doc. 1-2].

To obtain repayment of the improper deductions that Range assessed against the Override and to obtain a judicial determination that such deductions cannot be made in the future, Jesmar filed its Complaint.

### III. Procedural History

Jesmar filed its Complaint in the Court of Common Pleas of Greene County, Pennsylvania on June 12, 2017 at Docket Number 439 of 2017. [Doc. 1-2]. On July 13, 2017, Range filed its Notice of Removal with this Honorable Court. [Doc. 1]. Contemporaneous with the filing of this Brief, Jesmar files its Motion to Remand pursuant to 28 U.S.C. § 1447, which must be filed within thirty (30) days of the date of removal.

---

[1] The calculations of the amount owed in the Complaint did not include an additional $1,673.50 in deductions associated with an April 28, 2017 statement, which would have resulted in damages of $9,028.36. This was not alleged in the Complaint but is presented herein for purposes of candor to the tribunal.

3

## IV. Question Presented

Question: Does the Notice of Removal filed by Range plausibly set forth that the value of Jesmar's claim exceeds the $75,000.00 amount-in-controversy required for this Honorable Court to exercise subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1332 and 1446?

Suggested Answer: No

## V. Argument

Rather than presenting evidence that the value of Jesmar's claim exceeds the jurisdictional threshold of $75,000.00 required by 28 U.S.C. §§ 1332 and 1446, Range's Notice of Removal wholly relies on conclusory statements without providing factual support and, despite claiming that the amount in controversy requirement is met, fails to identify what the value of the claim actually is. The value of the claim does not meet the jurisdictional threshold. Range has failed to meet the requirements of 28 U.S.C. § 1446 to establish the jurisdiction of this Honorable Court and this matter must be remanded to the Court of Common Pleas of Greene County, Pennsylvania.

### A. Legal Standard

Range removed this matter to this Honorable Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Section 1332(a) sets minimum requirements for federal court

jurisdiction based on amount in controversy of at least $75,000.00 and the parties being citizens of different states. 28 U.S.C. § 1332. In turn, Section 1446(c), governing removal, provides that:

> . . .(2) if removal of a civil action is sought on the basis for the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that –
>
> (A) The notice of removal may assert the amount in controversy if the initial pleading seeks –
>
> (i) Nonmonetary relief; or
> (ii) A money judgment but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> (B) Removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

*See,* 28 U.S.C. § 1446(c). The United States Supreme Court, in Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. __,135 S.Ct. 547 (2014), held that, ". . . as specified in § 1446(a), a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." A plaintiff may seek remand to state court based on a lack of subject jurisdiction or a defect in the removal process. *See,* PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d. Cir. 1993).

**B. The Notice of Removal does not present a plausible claim that the amount in controversy in this proceeding exceeds $75,000.**

The entirety of Range's claim related to the amount in controversy appears to be premised on the theory that Range expects that the value of this case will exceed $75,000.00 in the future, based on the effect of the passage of time. It is respectfully submitted that Range's focus on future damages under an installment obligation, as the Agreement and underlying Lease are, is not the means by which the amount in controversy is determined and, notwithstanding this, the law requires more than such a bald assertion that is not premised on any documented fact, as Range has presented.

> **a. The only damages that may be considered in this matter for determining the amount in controversy is the value of the deductions taken to-date, which is significantly less than $75,000.**

A close examination of the Complaint undermines Range's claims as to the amount in controversy. Whereas the Complaint sets forth three (3) separate claims, the object of each claim is identical: a determination that Range's deductions from the Override are improper. The value of the deductions that Range has withheld from Jesmar to-date is undeniably only a fraction of the $75,000.00 minimum amount in controversy required by 28 U.S.C. § 1446. [Doc. 1-2]. Although Jesmar would be owed additional money in the future *if* the well subject to the Assignment continues to produce, this Honorable Court should not look to future damages to

determine the amount in controversy in this case at the time of removal. *See,* Dardovitch v. Haltzman, 190 F.3d 125 (3d Cir. 1999).

In Dardovitch, a trust beneficiary filed suit in U.S. District Court in a diversity action wherein Dardovitch was entitled to a total of $104,000.00 payable from a trust, but which would only be disbursed when the trust received money to pay out. Id. at 132.[2] At the time of the commencement of the suit, only $34,000.00 was due to Dardovitch. Id. at 135. The question before the Dardovitch court was thus whether the $34,000.00 that was owed was the basis for evaluation of the amount in controversy or whether the entirety of Dardovitch's $104,000.00 interest in the trust was the appropriate sum to consider in the jurisdictional inquiry. Id. The Dardovitch court employed the following analysis:

> Where a plaintiff brings a suit for payment of money as part of an ongoing and continually accruing obligation, such as an installment contract, the amount in controversy is generally limited to the amount then due and owing, even if a judgment would have collateral estoppel effects on liability for future payments. Where, by contrast, a suit is brought to establish directly the right to receive any payments because the putative defendant has repudiated that right entirely, and not just with respect to current payments, the amount in controversy is the entire amount that may ever come due.

---

[2] Although Dardovitch was originally filed in federal court as a diversity action pursuant to 28 U.S.C. 1332, it is reasonable to extend its rationale to a case of removal, because cases may only be removed to the United States District Court if they could have originally been filed in the federal court. *See,* Williams, 482 U.S. 386, 392 (1987).

7

Id. (internal citations omitted). The Dardovitch court found that the amount in controversy requirement was satisfied because it was determined that Dardovitch had good cause to believe that he would not be paid any more money out of the trust. Id. at 136.

Range's obligation to pay the Override to Jesmar is a form of an installment contract obligation. The underlying Lease obligates Range to pay a royalty to the landowner based on the value of gas "produced and marketed from the Leasehold during the preceding month." [Doc. 1-2]. In turn, Jesmar's Override is also based on the value of gas produced and sold, which, per the Lease, is calculated on a monthly basis by Range. [Doc. 1-2]. In this way, Range has an obligation each month to make a payment to the landowner and to Jesmar based on the value of gas sold in the preceding month. As discussed in Lutz v. Chesapeake Appalachia, LLC, the obligation to pay royalties under an oil and gas lease has been found to be a divisible obligation of a lease by a number of courts when evaluating the application of the statute of limitations. 717 F.3d 459, 466 (6th Cir. 2013) (collecting cases). The Pennsylvania Superior Court has interpreted the application of the statute of limitations to claims for unpaid royalty payments as an installment contract. *See,* Ritter v. Theodore Pendergrass Teddy Bear Productions, Inc., 514 A.2d 930 (Pa. Super. Ct. 1986). Accordingly, it is submitted that Range's

obligation to pay the Override to Jesmar be considered a divisible or installment obligation.

By application of Dardovitch, the only sums that should be considered by this Honorable Court in the evaluation of the amount in controversy are the unpaid deductions that Range has not tendered to Jesmar that are due under the Override. Unlike in Dardovitch, there is no indication, nor has anything been pled in the Complaint, to suggest that Range is repudiating the entirety of its obligations to make payments to Jesmar under the Assignment. Rather, the only issue in dispute is whether Range may deduct certain costs from the Override. [Doc. 1-2]. The amount of these deductions, recognized by all parties, is presently only a fraction of the $75,000.00 threshold necessary under 28 U.S.C. §§ 1332 and 1446. While it is true that Jesmar is entitled to future payments from Range under the Override *if* and *when* they accrue (discussed *infra*), and that the amount of those payments would be impacted by a decision in Jesmar's favor with respect to the propriety of the deductions, Dardovitch counsels that the liability for future payments under the Override should not be considered in a determination of the amount in controversy.

While Range asserts in its Notice of Removal that the amount in controversy should be informed by the value of the declaratory judgment claim raised by the Plaintiffs, this does not have an actual effect on the analysis of this case. In Hunt v. Washington State Apple Advertising Commission, the United States Supreme

obligation to pay the Override to Jesmar be considered a divisible or installment obligation.

By application of Dardovitch, the only sums that should be considered by this Honorable Court in the evaluation of the amount in controversy are the unpaid deductions that Range has not tendered to Jesmar that are due under the Override. Unlike in Dardovitch, there is no indication, nor has anything been pled in the Complaint, to suggest that Range is repudiating the entirety of its obligations to make payments to Jesmar under the Assignment. Rather, the only issue in dispute is whether Range may deduct certain costs from the Override. [Doc. 1-2]. The amount of these deductions, recognized by all parties, is presently only a fraction of the $75,000.00 threshold necessary under 28 U.S.C. §§ 1332 and 1446. While it is true that Jesmar is entitled to future payments from Range under the Override *if* and *when* they accrue (discussed *infra*), and that the amount of those payments would be impacted by a decision in Jesmar's favor with respect to the propriety of the deductions, Dardovitch counsels that the liability for future payments under the Override should not be considered in a determination of the amount in controversy.

While Range asserts in its Notice of Removal that the amount in controversy should be informed by the value of the declaratory judgment claim raised by the Plaintiffs, this does not have an actual effect on the analysis of this case. In Hunt v. Washington State Apple Advertising Commission, the United States Supreme

Court held that, where declaratory judgment is sought, ". . . the amount in controversy is measured by the value of the object of the litigation." 432 U.S. 333 (1977). Here, as discussed *infra*, the object of the declaratory judgment claim is for a judicial determination that the Assignment does not allow the deductions that Range has taken. [Doc. 1-2]. This relief is a prerequisite for the award of monetary relief under Count I or Count II.

As a determination about the interpretation of the Assignment would only have the effect of collateral estoppel in the future, under Dardovitch, it is clear that there is no independent monetary value associated with Count III of the Complaint and, as a result, the "object of the litigation", for purposes of calculating the amount in controversy, turns upon the unpaid amounts due under the Override to-date and not the payments that would be due based on a determination that the Assignment does not allow future deductions. Therefore, the Notice of Removal does not and cannot advance a plausible claim that Range's damages exceed $75,000.00 because, as Range itself notes, only a fraction of that amount has not been paid. Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. __,135 S.Ct. 547 (2014). [Doc. 1].

### b. Range only speculates about future damages and provides no substantiation for its calculations to justify an alleged amount in controversy in excess of $75,000.00.

In the event that this Honorable Court finds that the Dardovitch standard is not dispositive, Range's claims still fail because of the complete lack of evidence to support Range's claim that the amount in controversy has been met. The heart of this case is a contract dispute about whether the Assignment allows Range to deduct a variety of costs from the Override. [Doc. 1-2]. The Complaint itself pleads that the value of Jesmar's claim, at the time that the Complaint was filed, did not exceed $50,000. [Doc. 1-2]. In fact, the calculations of the deductions from the Override that were contained in the Complaint revealed that only a fraction of the $75,000.00 amount in controversy threshold was owing. [Doc. 1-2]. Given the amount of damages, the *ad damnum* clauses in the Complaint, which pled damages that were not presently in excess of $50,000.00, were asserted in good faith, should be credited, and should be conclusive as to the amount in controversy in this proceeding. 28 U.S.C. § 1446(c)(2)(A).

To the extent that this Honorable Court does not accept the *ad damnum* clauses as conclusively demonstrating the amount in controversy in this proceeding, the "exceptions" enunciated in subsections (A)(i) and (ii) to Section 1446(c)(2) have not been established by Range in its Notice of Removal. Subsection (c)(2)(A)(i) of Section 1446 allows the Notice of Removal to assert the

amount in controversy if the Complaint seeks nonmonetary relief. 28 U.S.C. § 1446(c)(2)(A)(i). Along these lines, subsection (C)(2)(A)(ii) allows the Notice of Removal to assert the amount in controversy if a particular sum is not permitted to be set forth in the *ad damnum* clause or where an amount in excess of that sum is recoverable as damages. 28 U.S.C. § 1446(c)(2)(A)(ii). Notably absent from the Notice of Removal is any assertion from Range about what the amount in controversy actually is, other than speculation that it is expected to be in excess of $75,000.00.

The United States Court of Appeals for the Third Circuit holds that ". . . the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d. Cir. 2007) (citing Samuel Bassett v. Kia Motors America, Inc., 357 F.3d 392, 396 (3d. Cir. 2004) and Morgan v. Gay, 471 F.3d 469, 473 (3d. Cir. 2006). Whereas Range claims that the amount in controversy exceeds $75,000.00, it does not offer any substantiation for this contention, which dictates that, in a system where removal statutes are strictly and narrowly construed, this matter was inappropriately removed to this Honorable Court.

The money damages involved in this suit are a result of deductions from the Override that are assessed by Range. The Override itself is a percentage of the

value of gas sold from a certain oil and gas well in Buffalo Township, Washington County that is subject to the Assignment. [Doc. 1-2]. The value associated with the Override necessarily depends on a number of factors, such as the volume of gas produced and the price that the gas is sold for. It is the interaction of these factors which makes the ultimate damages in this case, at best, uncertain, and reinforces the sensibility of applying Dardovitch.

Range supports its argument based on the Affidavit of Sarah Black, wherein Ms. Black contends:

> Based on my personal knowledge of (i) the volumes of Gas produced from the Well, to date; (ii) the production histories of Range's other similarly situated wells in Buffalo Township, Washington County, Pennsylvania; and (iii) the post-production costs incurred in connection with the Gas produced from the Well, I *expect* Plaintiff's pro-rata share of the post-production costs for the Gas produced from the Well to exceed $75,000.00.

[Doc. 1-5 at p. 2] (emphasis added). It seems Ms. Black's *expectation* that damages will exceed $75,000.00 is based on a comparison between the well at-issue in this case, and other wells. This explanation is unsupported and ignores critical details which are fundamental to an understanding of the valuation of this case moving forward, which is Range's mistaken theory for how the amount in controversy is met. [Doc. 1-5]. For example, one must speculate as to whether the volumes of gas produced from the well at-issue here were based on the free flow of gas, which would likely deplete the reservoir more rapidly, or whether those volumes were

13

regulated. Similarly, Ms. Black provides no detail about the identities of the wells that she reviewed in her alleged comparison, and whether gas from those wells flows freely or is regulated. [Doc. 1-5]. There is also no discussion as to whether there are capacity limitations by a pipeline operator that impacts the volume of gas from any of these wells, which may impact the value received, and the deductions taken therefrom.

Another critical feature of the ultimate damages in this case is the value of the gas, and correspondingly, the value of the production royalty and the Override. While Ms. Black makes reference to a review of post-production costs associated with the well at-issue, her Affidavit provides no context for this review. [Doc. 1-5]. Left unsaid are whether the post-production costs that Range is impermissibly deducting against the Override are fixed, or whether they fluctuate. Further, there is no mention by Ms. Black of the value of the gas that is sold by Range in order to calculate the value of the Override itself, which is relevant if the deductions fluctuate. Oil and gas are commodities whose prices are subject to constant change, in different markets. Range has not explained if the price it receives for gas that is sold from the well that is subject to the Assignment is based on a fixed contract, or whether it fluctuates based on market conditions.

There is simply too much information that is unknown about the amount of improper deductions in the future in order for any determination to be made that

the amount in controversy in this matter exceeds $75,000.00 based on a future projection, which itself should not be considered. Range has not offered any actual evidence upon which it could be concluded that the actual value of damages in this case exceeds $75,000.00 at the time of removal, despite being free to do so. As a matter of reference, the United States Court of Appeals for the Tenth Circuit has recognized that a defendant has an opportunity to introduce expert affidavits to set forth damages related to complying with the plaintiff's demands. McPhail v. Deere & Co., 361 F.3d 1016 (7th Cir. 2004). This was not done here and Range did not introduce any calculations or background information to identify *how* and *why* Ms. Black reached her ultimate conclusions and, more importantly, how this case meets the amount in controversy threshold. This does not rise to the standard enunciated in Dart Cherokee Basin Operating Co., LLC that a Notice of Removal must include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." 574 U.S. __,135 S.Ct. 547, 554.

## VI. Conclusion

For the foregoing reasons, the Motion to Remand should be granted and this matter should be remanded to the Court of Common Pleas of Greene County, Pennsylvania.

Respectfully submitted,

Dated: August 3, 2017

*s/ Robert J. Burnett*
Robert J. Burnett, Esq.
PA ID No. 76734
HOUSTON HARBAUGH, P.C.
Firm ID No. 371
401 Liberty Avenue
Three Gateway Center, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
(412) 281-4499 (Fax)
rburnett@hh-law.com

*s/ Brandon K. Meyer, Esq.*
Brandon K. Meyer, Esq.
PA ID No. 202457
MEYER LAW OFFICE, P.C.
136 East High Street
Waynesburg, PA 15370
(724) 833-9055
bmeyer@meyerlawpa.com

Counsel for Plaintiff, Jesmar Energy, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2017, a true and correct copy of the foregoing **Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(c)** was served on all counsel via the Court's CM/ECF Court Filing System as follows:

Kenneth J. Witzel, Esq.
Donald T. Dulac, Jr., Esq.
Barnes Dulac Watkins
603 Stanwix Street, Suite 1750
Pittsburgh, PA 15222
(412) 434-5544
kwitzel@barnesdulac.com
dondulac@barnesdulac.com
*(Counsel for Defendant, Range Resources – Appalachia, LLC)*

s/ Robert J. Burnett