# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESMAR ENERGY, INC., | ) | |
| | ) | Civil Action No. 17-928 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lisa Lenihan |
| v. | ) | |
| | ) | |
| RANGE RESOURCES – APPALACHIA, | ) | ECF No.  10 |
| LLC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

LENIHAN, Magistrate Judge

Currently pending before the Court is the Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(c) (ECF No. 10) brought on behalf of Plaintiff Jesmar Energy, Inc. ("Jesmar"). For the reasons set forth below, the Court will deny the motion to remand.

### I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

The following facts are alleged in Jesmar's Complaint, which has been brought against Defendant Range Resources – Appalachia, LLC ("Range").

On April 11, 2007, Jesmar signed an oil and gas lease ("Lease") with James E. Main ("Mr. Main") wherein Mr. Main agreed to lease to Jesmar the right to drill for, produce, and develop approximately 153 net mineral acres of oil and gas in Buffalo Township, Washington County, Pennsylvania (the "Property").  (Compl., ¶ 3, ECF 1-2.)  The term of the Lease was for ten years beginning on April 11, 2007, and for as long thereafter that date as gas may be produced from the Property.  (ECF No. 1-2, ¶ 4.)  The lease also provided for the payment of a

one-eighth (1/8) royalty realized by the lessee of the Lease from the proceeds of the gas from the

Property to be paid to Mr. Main.  (ECF No. 1-2, ¶ 6.)

Thereafter, on or about August 30, 2011, Rice Drilling B, LLC ("Rice Energy") and

Jesmar entered into a letter of intent for Rice Energy to purchase the Lease from Jesmar, with

Jesmar reserving an overriding royalty interest ("ORRI") equal to the difference between 17.5%

and the leasehold burden of record.  (Id., ¶ 7.)  On December 21, 2011, Jesmar and Rice Energy

executed an Assignment of Oil and Gas Lease (the "Assignment").  (Id., ¶ 8.)    The Assignment

assigned all of Jesmar's right, title, and interest under the Lease to Rice Energy subject to Jesmar

retaining an ORRI to the Lease:

> OVERRIDE: [Jesmar] hereby reserves an overriding royalty interest in the
> Subject Lease equal to the difference between the respective lease burdens of
> record and 17.5% in and to all of the oil, gas and the respective constituents
> thereof, produced, saved, and marketed from the lands described therein, but in no
> event shall [Jesmar] deliver to [Rice Energy] less than an 82.5% net revenue
> interest in the [Lease]. In the event that the Subject Lease covers less than a full
> interest in the oil and gas in the lands described therein or [Jesmar] owns less than
> a full interest in the Subject Lease the overriding royalty interest herein reserved
> shall be proportionally reduced.

(Id., ¶ 10.)  The lease burden of record (the Lease) referred to in the Assignment is a net lease

allowing the lessee under the Lease to take deductions from the lessor's l/8th royalty interest

resulting in the royalty interest from the lease burden of record under the Lease being actually

less than the 1/8th royalty interest defined in the Lease.  (Id. at ¶ 12.)  The Assignment does not

provide for any post-production costs, deductions and/or adjustments (including but not limited

to deductions for the cost of producing, gathering separating, treating, dehydrating, compression,

transporting, and otherwise making the oil, gas and other products ready for sale or use) to be

deducted from the ORRI. (Id. at ¶ 13.)

At some point between August 31, 2011 and April 14, 2016, Rice Energy conveyed the Assignment to Range. (Id. at ¶ 14.) In 2016, Range began drilling for, producing, and marketing natural gas from the Property, thereby requiring Range to pay Jesmar based upon the ORRI it retained in the assignment. (Id. at ¶ 17.) To date, Range has made three ORRI payments to Jesmar based upon the ORRJ it retained in the Assignment. (Id. at ¶ 18.) The three ORRJ payments that Range has made to Jesmar have all been reduced by deductions for various costs Range alleges it has incurred for, among other things, transporting, gathering, purchasing fuel and processing natural gas from the Property. (Id. at ¶ 20.)

More specifically, on February 28, 2017, Range provided a ORRI statement to Jesmar, calculating the gross value due Jesmar under the ORRI at $752.07, which was reduced by $332.82 for the following deductions to arrive at a net ORRI of $419.25: "Finn Capacity," "Gathering-INV," and "Proc Fee INV." (Id. at ¶¶ 21-22.) On March 31, 20l7, Range provided a ORRI statement to Jesmar calculating the gross value due Jesmar under the ORRI at $12,665.29, which was reduced by $4,389.15 for the following deductions to arrive at a net ORRI of $8,276.14: "Transport-INV," "Finn Capacity," "Gathering-INV,' "Purchased Fuel," and "Proc Fee-INV." (Id. at ¶¶ 23-24.) On May 31, 2017, Range provided an ORRI statement to Jesmar calculating the gross value due Jesmar under the ORRI at $5,311.22, which was reduced by $2,632.89 for the following deductions to arrive at a net ORRI of $2,678.33: "Firm Capacity," "Gathering-INV," "Purchased Fuel," and "Transport-INV."27. (Id. at ¶¶ 25-26.)

To date, Range has not made any other payments to Jesmar in compensation for any oil, natural gas, or constituent parts thereof that it obtained pursuant to the rights granted to it under the Lease through its assignment.[1] (Id. at ¶ 27.)

On June 12, 2017, Jesmar instituted this action in the Court of Common Pleas of Greene County by way of a Complaint that alleges claims against Range for breach of contract, unjust enrichment, and declaratory relief related to an Assignment of Oil and Gas Lease ("the Assignment") originally entered into between Jesmar and Rice Energy, and later acquired by Range. (Id.) Essentially, Jesmar contends that Range has breached the Assignment and is being unjustly enriched by only paying Jesmar for a portion of its ORRI from the natural gas produced from the Property, and improperly deducting costs from these payments. ((Id. at ¶ 31.) "By improperly taking deductions from Plaintiff s ORRI, Defendant has failed to pay Plaintiff the required proceeds from the Property in the amount of '17.5% in and to all of the oil, gas and the respective constituents thereof produced, saved, and marketed from the [Property]' less ''the respective lease burdens of record ....'.'" Jesmar also seeks declaratory relief in the form of a judgment order declaring:

> (a)   The Assignment requires that Defendant pay Plaintiff "l7.5% in and to all of the oil, gas and the respective constituents thereof, produced, saved, and marketed from the [Property]" less "the respective lease burdens of record ....";
>
> (b)   The "lease burden of record" referred to in the Assignment is "one-eighth of the revenue realized by [Defendant] for all gas and the constituents thereof produced and marketed from the [Property]..." "less all taxes, assessments, and adjustments on production ....";
>
> (c)   The Assignment requires that Defendant pay Plaintiff 17.5% of all of the oil, gas and the respective constituents thereof, produced, saved, and marketed from the Property, less 12.5% of the revenue realized by Defendant for all gas and the

---

[1] Jesmar acknowledges in its support brief that subsequent to filing the Complaint, Range made an additional ORRI payment to Jesmar, again taking deductions. *See* Plf.'s Supp. Br. at 3, n. 1, ECF No. 11.

constituents thereof produced and marketed from the Property, less all taxes, deductions, assessments, and adjustments on production related to the aforesaid 12.5% of the revenue realized by Defendant; and,

(d) Any other relief the Court deems appropriate.

(Id., *ad damnum* cl. – Count III.)

On July 13, 2017, Range removed this action to federal court, predicating removal jurisdiction on diversity of citizenship. (Notice of Removal, ECF No. 1.) Attached to the notice was an affidavit by Sarah Black, who is employed by Range as a Landman II. (Black Aff., ECF No. 1-5.)

In response, Jesmar filed the pending motion for remand (ECF No. 10) and a supporting brief (ECF No. 11). Jesmar did not submit any evidence in support of its motion to remand.

Range filed a Response in Opposition to the Motion for Remand (ECF No. 18), attaching thereto an affidavit by Jeff Scott (ECF No. 18-1.) Thus, the motion is ripe for disposition.

## II.     LEGAL STANDARD – REMOVAL & MOTION TO REMAND

Section 1441 of Title 28, United States Code, governs the removal of a case to federal court. Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §1441(a). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir. 1987) (other citations omitted)); *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 219 (3d Cir. 2005). Where a motion for remand is filed, the defendant has the burden

of proving that removal was proper. *Sikirica,* 416 F.3d at 219 (citing *Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir. 2004)).

## III.   DISCUSSION

Range has predicated removal jurisdiction on diversity of citizenship under 28 U.S.C. §1332. The parties dispute only whether the jurisdictional amount has been satisfied.

The Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. 394, P.L. 112-63, clarified the standard for satisfying the amount in controversy when a case is removed to federal court. Codified at 28 U.S.C. §1446(c)(2), the new provision states:

> (2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--
>
> > (A) the notice of removal may assert the amount in controversy if the initial pleading seeks--
> >
> > > (i) nonmonetary relief; or
> > >
> > > (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
> >
> > (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. §1446(c)(2) (West). Preponderance of the evidence means "'proof to a reasonable probability that jurisdiction exists.'" *Frederico v. Home Depot,* 507 F.3d 188, 196 n. 6 (3d Cir. 2007) (quoting *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366 (7th Cir. 1993)). In ascertaining the amount in controversy in a removal case, it is clearly established that the amount in controversy is determined from the face of the complaint at the time of removal. *Samuel-Bassett*, 357 F.3d at

398; *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 666 (3d Cir. 2002) (citation omitted). Where, however, the complaint does not assert a monetary amount associated with the requested relief, the court may look to the notice of removal to determine the amount in controversy. *Frederico,* 507 F.3d at 196 (citing *Morgan v. Gay,* 471 F.3d 469, 474 (3d Cir. 2006)). The notice of removal "serves the same function as the complaint would if filed in the district court" in terms of the court's determination of whether the jurisdictional amount has been met. Id. at 197. Moreover, as "the plaintiff is the 'master of the case' and 'may limit his claims ... to keep the amount in controversy below the threshold,' the removing party must 'show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands'." *Morgan*, 471 F.3d at 474 (quoting *Brill v. Countrywide Home Loans*, *Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)). With these precepts in mind, the Court turns now to Plaintiff's motion to remand and the parties' arguments with respect thereto.

In its brief in support of its motion for remand, Jesmar argues that "the Notice of Removal is deficient because it is conclusory in nature and sets forth no facts with which this Honorable Court may determine that the amount-in-controversy threshold of $75,000 has been met because there are no such facts." (ECF No. 11 at 2.) More specifically, Jesmar contends that in determining the amount in controversy the Court can only take into account Range's underpayments to date, an amount far below the $75,000.00 threshold. (Id. at 6.) Jesmar further contends that because it pleaded in good faith in the *ad damnum* clauses of the Complaint that the value of its claims did not exceed $50,000, these clauses "should be conclusive as to the amount in controversy in this proceeding." (Id. at 11.)

In response to Jesmar's motion and supporting brief, Range first argues that Jesmar's Complaint does not state an amount in controversy and therefore, it was permitted to state the amount in controversy in its Notice of Removal, through a short and plain statement, which it did. (Resp. in Oppo. to Mot. to Remand Pursuant to 28 U.S.C. § 1447(c) at 6-8, ECF No. 18.) Second, Range contends that through the affidavits of Ms. Black and Mr. Scott, it has proven by a preponderance of the evidence that the amount in controversy in this matter exceeds $75,000.00. (Id. at 8-10.) Finally, Range argues that the Court should not be persuaded by Jesmar's attempt to limit the actual value of its claims in light of: (1) the open-ended nature of its damages claim; (2) the Complaint including a broad reaching declaratory judgment claim; and (3) Jesmar not stipulating to the amount in controversy being less than $75,000.00. (Id. at 10-11.)

Plaintiff's Complaint states claims for breach of contract, unjust enrichment, and declaratory relief. (ECF No. 1-2.) As summarized by Jesmar in its supporting brief, the Complaint was brought "[t]o obtain repayment of the improper deductions that Range assessed against the Override and to obtain a judicial determination that such deductions cannot be made in the future. (ECF No. 11 at 3.) In the *ad damnum* clauses of its breach of contract and unjust enrichment claims, Jesmar seeks a judgment in its favor and against Range "in the amount of the difference between what Defendant has paid Plaintiff and 17.5% in and to all of the oil, gas and the respective constituents thereof, produced, saved, and marketed from the Property less the respective lease burdens of record, plus any interest and costs of suit, which is currently an amount less than $50,000, and such other and further relief as the Court may deem appropriate."

(Id. at 11-13.)   As set forth, *supra.*, in the *ad damnum* clause of its declaratory relief claim, Jesmar seeks a judgment in its favor and against Range and "requests the Court to declare the following:"

> (a)   The Assignment requires that Defendant pay Plaintiff "l7.5% in and to all of the oil, gas and the respective constituents thereof, produced, saved, and marketed from the [Property]" less "the respective lease burdens of record ....";
>
> (b)   The "lease burden of record" referred to in the Assignment is "one-eighth of the revenue realized by [Defendant] for all gas and the constituents thereof produced and marketed from the [Property]..." "less all taxes, assessments, and adjustments on production ....";
>
> (c)   The Assignment requires that Defendant pay Plaintiff 17.5% of all of the oil, gas and the respective constituents thereof, produced, saved, and marketed from the Property, less 12.5% of the revenue realized by Defendant for all gas and the constituents thereof produced and marketed from the Property, less all taxes, deductions, assessments, and adjustments on production related to the aforesaid 12.5% of the revenue realized by Defendant; and,
>
> (d) Any other relief the Court deems appropriate.

(Id. at 14.)

Contrary to Jesmar's contention, the Court finds that Jesmar's Complaint does not demand a specific sum.  Nor should this conclusion be surprising "because Pennsylvania Rule of Civil Procedure 1021(b) prohibits Plaintiff from pleading a specific sum when seeking relief for unliquidated damages." *Congregation of Beth Israel of Mahanoy City, PA v. Congregation Eitz Chayim of Dogwood Park*, No. 3:16-CV-1671, 2017 WL 3392353, at *4 (M.D. Pa. Aug. 7, 2017).   Moreover, Jesmar's Complaint seeks nonmonetary relief.  Therefore, consistent with 28 U.S.C. §1446(c)(2)(A), Range was entitled to plead the amount in controversy in its Notice of Removal. 28 U.S.C. § 1446(c)(2)(A).

Having so held, the Court next looks at the Notice of Removal and must determine whether the notice contains "a plausible allegation that the amount in controversy exceeds the

9

jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554

(2014). With respect to the amount in controversy, Range alleged the following in its Notice of

Removal:

> Based on the averments of the Complaint and the evidence of record, including
> the Affidavit of Sarah Black, which provides that the post-production costs that
> Defendant has deducted, and intends to continue deducting, from Plaintiff's ORRI
> Payments are expected to exceed $75,000, the Defendants have met their burden
> of establishing that the amount in controversy exceeds $75,000. That being the
> case, this action is within the original jurisdiction of the district court. *See* 28
> U.S.C. § 1332(a).

(ECF No. 1, ¶ 20.) In her affidavit, Ms. Black stated in relevant part:

> 4. I am personally familiar with: (i) the Oil and Gas Lease attached to the
> Complaint as Exhibit A (the "Lease"); (ii) the Assignment of Oil and Gas Lease
> attached to the Complaint as Exhibit B (the "Assignment"); (iii) the Buffalo
> Township Unit "C" (the "Unit"), in which 62.9531 acres of the leasehold under
> the Lease are included, as reflected in Exhibits C and D of the Complaint; (iv) the
> volume of natural gas and other hydrocarbons ("Gas") produced from the well
> drilled on the Unit (the "Well"); (v) the overriding royalty payments made to
> Plaintiff for the Gas produced from the Well (the "ORRI Payments"); and (vi)
> Range's deduction of Plaintiff s pro-rata share of the post-production costs from
> the ORRI Payments.
>
> 5. The Complaint contends that Range is not entitled to deduct any post-
> production costs from the ORRI Payments. Range disagrees and believes it is
> legally entitled to deduct Plaintiff s pro-rata share of the post-production costs
> from the ORRI Payments.
>
> 6. Based on my personal knowledge of (i) the volumes of Gas produced from
> the Well, to date; (ii) the production histories of Range's other similarly situated
> wells in Buffalo Township, Washington County, Pennsylvania; and (iii) the post-
> production costs incurred in connection with the Gas produced from the Well, I
> expect Plaintiff's pro-rata share of the post- production costs for the Gas produced
> from the Well to exceed $75,000.

(ECF No. 1-5, ¶¶ 4-6.)

Having reviewed the Notice of Removal, contrary to Jesmar's contention, the Court finds

that Range's Notice of Removal, which incorporates the statements contained in Sarah Black's

affidavit, is not conclusory in nature and includes a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. (*See* ECF No. 1, ¶¶ 17-18, and 20, ECF No. 1-5.)

Jesmar, however, contests Range's allegation that the amount in controversy exceeds $75,000. Therefore, Range must prove, by a preponderance of the evidence, that the amount in controversy is more than $75,000. *See Dart Cherokee Basin Operating Co.,* 135 S. Ct. at 554 ("[e]vidence establishing the amount [in controversy] is required by § 1446(c)(2)(B) ... when the plaintiff contests, or the court questions, the defendant's allegation.").

In order to determine whether Range has proven, by a preponderance of the evidence, that the amount in controversy is more than $75,000, the Court must first address the parties' arguments as to whether, in making this determination, the Court can include the value of the royalty payments Range has not yet made under the terms of the Assignment or is limited to Range's underpayments to date. In *Dardovitch v. Haltzman,* 190 F.3d 125 (3d Cir. 1999), our appellate court stated:

> Where a plaintiff brings a suit for payment of money as part of an ongoing and continually accruing obligation, such as an installment contract, the amount in controversy is generally limited to the amount then due and owing, even if a judgment would have collateral estoppel effects on liability for future payments. *See Aetna Cas. & Sur. Co. v. Flowers,* 330 U.S. 464, 467, 67 S.Ct. 798, 91 L.Ed. 1024 (1947) ("If this case were one where judgment could be entered only for the installments due at the time of the commencement of the suit, future installments could not be considered in determining whether the jurisdictional amount was involved, even though the judgment would be determinative of liability for future installments as they accrued."). Where, by contrast, a suit is brought to establish directly the right to receive any payments because the putative defendant has repudiated that right entirely, and not just with respect to current payments, the amount in controversy is the entire amount that may ever come due. *See Aetna,* 330 U.S. at 469, 67 S.Ct. 798 (finding jurisdiction where a statute permitted a single action to establish the right to workers' compensation insurance installment payments, even though currently due payments did not exceed the jurisdictional

amount; amount in controversy included future payments where the right to all the payments was in issue).

*Dardovitch*, 190 F3d. at 135.  *See also Werwinski*, 286 F.3d at 666 ("The court must measure the amount 'not ... by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.'") (quoting *Angus v. Shiley, Inc.,* 989 F.2d 142, 146 (3d Cir. 1993)).

Upon review of the allegations underlying Jesmar's Complaint, if the complaint consisted only of the breach of contract and unjust enrichment claims, the case would be "a suit for payment of money as part of an ongoing and continually accruing obligation," and therefore, in determining whether Range has proven by a preponderance of the evidence that the amount in controversy involved in this case is more than $75,000, the Court would limit its review to "the amount then due and owing, even if a judgment would have collateral estoppel effects on liability for future payments." *Dardovitch*, 190 F3d. at 135.  Jesmar's Complaint, however, also states, in Count III of the complaint, a claim for declaratory relief.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347 (1977) (citations omitted).  *See also Lewis v. Ford Motor Co.,* 610 F. Supp.2d 476, 487 (W.D. Pa. 2009); id. (citing *In re Corestates Trust Fee Litigation*, 39 F.3d 61, 65 (3d Cir. 1994) (the court measures the amount in controversy in claims for injunctive relief by "the value of the right sought to be protected by the equitable relief."). The Court finds that the object of Jesmar's litigation is a determination that the royalty payments Range owes Jesmar under the Assignment do not include an off-set for post-production costs, and further, that the value of this determination includes both past and future payments under the

Assignment.  (*See* ECF No. 1-2, ¶¶ 34, 43, *ad damnum cl.* – Ct. III.).  *See also* <u>id.</u> at ¶¶ 34 and 43

("Plaintiff believes that Defendant' s unlawful retention of proceeds from Plaintiff in

contravention of the terms of the Assignment will continue without an Order of Court preventing

same as the Property is still producing natural gas, and Defendant's obligation to pay Plaintiff

will continue so long as Defendant continues to produce oil, gas and the respective constituent

thereof on the Property pursuant to the Lease.").

Having so held, the Court turns to determining whether Range proven, by a

preponderance of the evidence, that the value of the object of the litigation is more than the

$75,000 threshold.  Range contends that the value of the post-production offset is $107,000, and

in support of its contention, has submitted the affidavit of Jeff Scott, who is the Managing

Member of Three Rivers Royalty, LLC, ("TRR"), an oil and gas mineral and royalty acquisition

company that is focused on acquiring rights and interest in Southwest Appalachia, including

Buffalo Township," and has "extensive experience acquiring oil and gas minerals and royalties

in Southwest Appalachia, including Buffalo Township," where the well at issue in the

Assignment is located, and is "very familiar with the current market for oil and gas mineral and

royalty acquisitions in Buffalo Township."  (*See* ECF No. 18-1, ¶¶ 2-3.)  In his affidavit, Mr.

Scott states in pertinent part:

> 6.     I am personally familiar with: (i) the Oil and Gas Lease attached to the
> Complaint as Exhibit A (the "Lease"); and (ii) the Assignment of Oil and Gas
> Lease attached to the Complaint as Exhibit B (the "Assignment").
>
> 7.     On or about July 12, 2017, TRR offered to purchase Jesmar's over-riding
> royalty interest under the Lease and the Assignment for approximately $306,000.
> TRR's offer was based on the assumption that the Lease and the Assignment
> permit Range to deduct post-production costs when calculating Jesmar's
> overriding royalties. Jesmar rejected TRR's offer. I believe the offer was fair and
> reasonable under current market conditions.

8.    If the Lease and the Assignment did not permit Range to deduct post-production costs when calculating Jesmar 's overriding royalties, TRR would be willing to increase its offer to purchase Jesmar's overriding royalty interest by 35%, or approximately $107,100, to approximately $413,100. The increase in the offer accurately reflects my valuation of Range's ability to deduct post-production costs when calculating Jesmar's overriding royalties under the Lease and the Assignment.

(Id., ¶¶ 6-8.)

Based upon the statements made by Ms. Black and Mr. Scott in their affidavits, the Court concludes that Range has proven, by a preponderance of the evidence, that the value of the object of the litigation is an amount in excess of the $75,000 jurisdictional threshold for this Court to exercise subject matter diversity over the action.  Accordingly, Jesmar's motion to remand shall be denied.

## IV.    CONCLUSION

For the reasons set forth above, the Court will deny Plaintiff's Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(c) (ECF No. 10).  An appropriate order will follow.


Dated: October 13, 2017                          BY THE COURT:


_____
LISA PUPO LENIHAN
United States Magistrate Judge


cc:    All Counsel of Record
       *Via Electronic Mail*